Good morning, Your Honors. May it please the Court. Did I get the pronunciation correct? Yes, you did, Your Honor. Thank you. My name is Robert Jacobs on behalf of the two petitioners in this case. This case is about a due process violation that occurred in the immigration court several years ago. This occurred approximately three months after the Board of Immigration Appeals had finally come down with a case that attempted to clarify the new meaning of the term exceptional and extremely unusual hardship for cancellation of removal relief in immigration court. And, Your Honors, the reason for the violation was that — Well, now, don't we have a threshold jurisdictional issue? Do we have jurisdiction to hear this case? Yes, Your Honor. Despite the fact that the relief requested in immigration court was a discretionary request of relief, this Court does maintain jurisdiction over due process violations because aliens are equally entitled to a full and fair hearing under the Constitution. And before I go on, one of the main issues for proving a due process violation is the element of prejudice. Up until this point, the petitioners have not demonstrated proof of the eye surgery that was testified to in the immigration. And why exactly was that? There was plenty of time to present that proof. Why was that proof never presented? Your Honors, first of all, the proof was not necessarily required to be presented. The alien does have a right to have his case heard before this court as opposed to filing a motion to remand. But I must point out that I do have a document today that was faxed to me yesterday by Blue Cross of California indicating that the petitioner's U.S. citizen son did have an eye surgery on May 4th of 2004. But you understand we can't take evidence here. Actually, there was a case, Colmenar v. INS, that stated that a petitioner may present evidence in the appellate court outside of the record of proceeding as long as it's to show prejudice because of a lack of a full and fair hearing. And I do have three copies of the documents I attempted to serve it. I'd like to ask the Court if this may be admitted. Well, the Court will receive whatever you're going to give us, but there will be no ruling as to whether it's acceptable. You understand this is way outside the record. I'm not familiar with that case yet, and this is, I have to say, very unusual. But I see no reason, barring any exception of my colleagues, that we at least will receive what you have and we'll make a ruling after oral argument. Thank you, Your Honor. What's the citation to your case? It's 810, Fed 3rd, 967. It's a Ninth Circuit case from 2000. 810, 5 3rd. That must be 5 2nd. I mean, yeah, 2nd. Fed 3rd. 810, Fed 3rd? Yes. Okay. 810? 810, Fed 3rd, 967. Okay. Ninth Circuit case from 2000. Would you please? I'm sorry. Actually, it's 210, Fed 3rd. Oh, 210. That's what I was thinking, 810, Fed 3rd. And it's Coleman, C-O-L-E-M-E-N-A-R versus I-N-S. Counsel, we have another rule that requires you to fill out individual gum sheets for the Court as well as for your opposing counsel. And be sure and do that with the deputy clerk before you leave the courtroom today. Certainly, Your Honor. So now you are asserting that there was prejudice in conjunction with the due process violation. Is that your argument? Correct, Your Honor. And what was the nature of the due process violation? When the case was set for a merits hearing, the immigration attorneys and aliens when preparing their cases had no guidance from the Board of Immigration Appeals as to what this new standard would be. It was an elusive standard. There had been case law regarding the old law and the old similar form of relief entitled suspension of deportation. Judges would routinely cite the numerous factors that would go into approving a case under the suspension of deportation law in the extreme. All right. But there's a statute out there, and you don't have to have a court ruling interpreting the words of the statute before you can't proceed on the statute. I don't understand your argument. The Petitioners in this case were able to present evidence, and as you can see from the record, the evidence is thick. However, what the evidence they presented was virtually nullified by the ruling that came out in Matter of Montreal. Matter of Montreal basically stated that the only way in which aliens could receive their relief was one of two ways. The first way was a serious medical problem, and the second way was a learning disability. So it basically wiped out the – all the evidence and made it virtually useless for their behalf. Didn't prior cases also talk about serious medical conditions? Yes, Your Honor. The prior cases did include medical conditions as one of many factors that would go into. So if there was – if there were cases that included a serious medical condition as a hardship basis, and there was a serious medical condition, why wouldn't the Petitioners be on notice that that should be included? Part of the problem with this case is that this – the U.S. citizen's son at the time had just turned 3 years old. He was a child who needed glasses, which is extremely unusual for a child of that age to require glasses. He also had – an eye doctor had said that he's going to require surgery or should require surgery in the future. The problem is that, you know, we look at these cases and think that at any one point in time, the doctor's going to be able to definitively state what's going to happen for the next 10, 15, 20 years. And when we try to get that information from the doctors, they don't like to give attorneys any information whatsoever. And so a lot of times medicals – Are you saying that doctors don't like to give attorneys information regarding serious medical conditions? Generally, when – they fear malpractice and they generally don't like to cooperate with attorneys in this type of situation. Let me ask you, is the due process violation that you're contending the state of the law was so uncertain that it didn't provide due process? Are you saying that the due process violation occurred because there wasn't a continuance after the case came down that you then relied on, and that the failure to grant the continuance was a denial of due process? When the case came down, the attorney on the case had filed a motion of withdrawal within two weeks. Two weeks after that, a new counsel had appeared before the judge and requested a continuance because of this medical problem. And the judge denied that motion, set it for two months later, which is not nearly enough time to prepare for this type of a hearing. And two months later, the attorney had gone in and had an appointment for this young U.S. citizen boy who was going to be seeing a specialist, and she requested, again, that the judge grant a continuance. The judge recognized that, stated that she would reconsider – she denied it, and then stated that she would reconsider it at the end of testimony, depending on what the testimony was in the case. Testimony did put forth the fact that the son did have eye problems, that he probably would be needing some type of eye surgery, and the judge still rendered a decision as if this was not going to happen. She said that she basically gave the case considering if he would need surgery, then I'm going to deny this case. She didn't say when he needs surgery, I'm going to consider whether this would be an extreme, exceptional, extremely unusual hardship. Counsel, what's your best case authority to support your argument that the lack of a definitive ruling interpreting a statute constitutes a due process violation? What case authority are you relying upon? That's a good question. I'm not relying on necessarily any authority, and I assume you're referring to my argument that the Board of Judges is failing to issue a decision in over four years. Yes. I do not have any case authority for that. I think my stronger argument is that the judge in this case violated due process by failing to issue the continuance, and that prejudice has been shown. Additionally, prejudice, in order to prove prejudice, the Petitioner only needs to show that it was plausible that there would have been a different result or that a different result could have occurred. We don't have to prove that it was likely that discretionary relief would have been granted. Is that the argument you made in your brief? Yes, you did. You did. I did. If there are no more questions, I have nothing further. Thank you, Counsel. Thank you, Counsel. We will now hear from the Government. Good morning. May it please the Court. My name is Cindy Ferrier, and I'll be representing the Attorney General in this matter. The Court does have jurisdiction to determine its own jurisdiction, and it has held that it retains jurisdiction over colorable constitutional claims. However, a colorable constitutional claim hasn't been raised in this case. First of all, as the Court noted, there was a statute, or the statute was in place early in, you know, from 1996, which, or 1997, actually, which set out the factors in the stand, or the requisite requirements for making out a case of cancellation of removal. In addition, specifically with regard to Petitioner's claim in this case, the Board's decision regarding, or clarifying, or interpreting, I guess, the terms of what would actually make out a discretionary determination for cancellation of removal was out approximately two to three months prior. I guess it was issued on May 5, 2001, the Board's decision. And the Petitioner didn't appear for the merit hearing until August. So he had all that time in order to find evidence which would support and bolster the claims regarding the eye surgery of the child. Counsel, what's your response to opposing counsel's argument that three months is not nearly enough to prepare a case of this nature? Well, as I think you noted, the standard had always included, even for suspension of deportation, the factors had always found relevant the health of the child, or the health of the qualifying relative. So that was something that has always been considered in discretionary determinations. Now, this was for this particular sort of relief. This was cancellation of removal rather than suspension of deportation. However, it's certainly foreseeable that that would be a factor that would play heavily in the determination of a discretionary nature. Let's see. And with regard to the new evidence that Petitioner is now submitting at this point, I'll just point out, as you noted, that this Court is limited to reviewing the record that was before the agency Do you know anything about this Colmenar case? I was just presented with this as well this morning, so I haven't thoroughly researched it. But I believe the Colmenar case actually dealt with an immigration judge who was acting very who was found to have acted unfairly and impartially, where the immigration judge actually inserted his own questions quite forcefully into the immigration proceedings, and also denied, I believe, that he also denied the submission of new evidence. I think that that is correct, and that is not the case in this particular case, because the immigration judge didn't deny the submission of evidence, and in fact, accepted the submission of evidence up until the date of the merits hearing, which was in August 2001. The new attorney had appeared before the judge on June 20, 2001, and the immigration judge at that point denied her request for a continuance and said, be prepared to go forward on the case in August 2001. And that hearing date of August 2001 had been set for quite some time. I believe it was actually in March 2000 when the alien had first appeared with counsel before the immigration judge, and that date was set. So in this case, the petitioners certainly had time to get evidence regarding the surgery that was necessary. And if that evidence was not available, maybe because they weren't able to diagnose the problem at the time, and the diagnosis maybe only became available later that he would actually need surgery, the petitioner was always free to submit a motion to remand and proffering the new evidence or even submitting the new evidence before the board and asking for the case to be remanded. However, that never happened in this case. In addition, with regard to the evidence today that the petitioner's son has actually had that surgery, it appears that that surgery actually took place in May of 2004, which was a year ago. And the evidence was not submitted at any point to the board. And presumably they would have... What was the date of the board hearing again? The date of the board hearing was in April of 2003, or the date that they actually issued their decision. But wasn't the hearing in August of 2001? Yeah, and then the last hearing before the immigration judge occurred in August of 2003. So your argument is that whatever happened in 2004 has no bearing on what should have happened in 2001 or even 2003. Correct. And if presumably they would have had the surgery scheduled prior to that actual surgery date, I'm sorry, I didn't say that right, presumably they had the surgery scheduled before the actual date of the surgery. If at that point it had been within the time limit for filing a motion to reopen, they could have done that even after the board issued its decision. And I would also just note that the immigration judge was acting within her authority when she did deny the request for the continuance. There are actually two requests for the continuances. The first one came in June of 2001 when the immigration judge said, you still have two months in order to acquire evidence, so I will deny the continuance. And then secondly, it occurred at the August 2001 hearing, she denied the request for the continuance. And there she noted that the alien had had time to gather documentation, that there were other, that the case had come on to the calendar in 2000 and had been scheduled since that time, and additionally that she didn't have any other hearing dates available for the remainder of the year. And the regulation that allows for continuances states that the immigration judge may continue a case for good cause shown, but it doesn't require a judge to continue a case for good cause shown. And lastly, I'd just like to point out, we didn't mention this in our briefs and it hasn't come up in the briefing, but the immigration judge also denied the wife's claim or the wife's application in this case because she failed to show continuous physical presence. Her case is consolidated, right? Well, they're separate. They're both before this court on the discretionary issue, but the continuous physical presence issue of just the wife, so her application is denied on that particular issue as well as the discretionary issue, that particular issue, continuous physical presence, was never challenged to the board or before this court. Was that a derivative application, her application? Her application is separate from the husband's. So with regard to the wife, there's actually the dispositive determination that she doesn't have continuous physical presence either. And that has not been appealed? And that was not appealed to the board or to this court. All right. So I guess in conclusion, the new evidence that has been raised before this court is something that the court doesn't have jurisdiction to consider. And while the court retains jurisdiction to determine jurisdiction and also have a colorable constitutional claim, neither of those are raised in this instance. So the court lacks jurisdiction to consider the claims raised here. Thank you, counsel. The case just argued will be submitted for decision, and we will now hear argument in Piedrillo v. Gonzalez. Thank you.
judges: O'scannlain, Rawlinson, Whaley